IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 04-257 |
| | ) See Civil Action No. 08-165 |
| ROBERT L. GRANT, | ) |
| | ) |
| Defendant/petitioner. | ) |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

BLOCH, District J.

On February 5, 2008, Petitioner, Robert L. Grant, filed a pro se Motion to Vacate Sentence under 28 U.S.C. § 2255 in the above-captioned case. Doc. #64. After counsel was appointed, Petitioner filed a Supplement to the Motion. Doc. #78. The Government filed a response thereto, to which the Petitioner replied. Docs. #82 and #83.

Petitioner alleges that the prosecutor, Troy Rivetti, offered him a "deal" whereby he would have been imprisoned for approximately five years, which induced him to plead guilty. Petitioner also alleges that neither Rivetti nor his trial attorneys told him that he would be considered a Career Offender, as that term is defined in the United States Sentencing Guidelines. Petitioner further alleges that his trial attorneys failed to: 1) investigate whether Petitioner was a Career Offender; 2) move to withdraw Petitioner's guilty plea; and 3) inform the Court about departure

factors. Petitioner argues that his Fifth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel were violated. He seeks to be allowed to withdraw his guilty plea and proceed to trial or, in the alternative, to be resentenced.

On July 16, 2009, the Court conducted an evidentiary hearing on the motion. At the hearing, Petitioner was represented by Kimberly Brunson and Lisa Freeland of the Office of the Federal Public Defender. The following witnesses testified: G. William Bills, Troy Rivetti, and Petitioner. After the hearing, the parties filed additional briefs. Docs. #96, #98, #99 and #100.

Based on the testimony and evidence presented at the hearing and the applicable law, the Court enters the following findings of fact and conclusions of law.

I. **Findings of Fact**

1. On October 7, 2004, a grand jury in the Western District of Pennsylvania returned a one-count indictment against Petitioner, charging him with distribution and possession with the intent to distribute less than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(b)(C). Doc. #1.

2. The case was prosecuted by Assistant United States Attorney Troy Rivetti and was initially assigned to the Honorable Donetta W. Ambrose, Chief Judge for the Western District of

Pennsylvania. Petitioner was represented by G. William Bills and Mark Rubenstein.

3. At Petitioner's arraignment in this case, Rivetti was informed that Pretrial Services personnel could not locate any criminal history for Petitioner. Evidentiary Hearing Transcript ("EH Tr.") at 40, 48-49. In addition, Rivetti reviewed Petitioner's "rap sheet," which showed numerous arrests under several different names, including Robert Coleman and Rashee Hawkins, with different dates of birth. EH Tr. at 47-49. Rivetti regarded "rap sheets" as being routinely inaccurate and incomplete. EH Tr. at 48. Rivetti had no reason to believe that Petitioner's "rap sheet" was accurate and complete. EH Tr. at 49.

4. Petitioner filed a Motion to Suppress Statements and Evidence and a Motion to Suppress Tape Recordings. Docs #19 and #20. Immediately prior to the hearing on these motions on February 16, 2005, Rivetti and Bills discussed the possibility of Petitioner pleading guilty to the indictment. EH Tr. at 8-9. Bills told Petitioner that his estimated sentence was approximately five years. EH Tr. at 8. Bills advised Petitioner that he had a "triable case." Petitioner declined to change his plea prior to the suppression hearing. EH Tr. at 9.

5. At the suppression hearing, Rivetti cross-examined Petitioner about his "rap sheet." EH Tr. at 50. Petitioner admitted that he had been convicted of a felony drug offense. EH

Tr. at 50-51. Rivetti knew that Petitioner used the alias, Robert Coleman. EH Tr. at 51. Rivetti also believed that there was a real Robert Coleman who also had a criminal history. EH Tr. at 51.

  6. On April 12, 2005, Chief Judge Ambrose issued an Order granting the motion to suppress statements and information taken from Petitioner's cell phone and an Order denying his motion to suppress tape recordings. Docs. #26 and #27.

  7. The case was reassigned to this Court on October 24, 2005, and a trial was set to commence on December 12, 2005. A few days before the trial, Rivetti called Bills to again discuss the possibility of a guilty plea. EH Tr. at 11, 45. Rivetti told Bills that Petitioner's low end of the guideline range could be as low as 51 months. Rivetti stated that, based on the drug quantity involved in the offense, he estimated that Petitioner's sentence would be in the range of five or six years. EH Tr. at 55. Rivetti and Bills never discussed whether Petitioner was a career offender. EH Tr. at 13.

  8. Bills then met with Petitioner and informed him that he estimated the low end of the guideline range to be 51 months. EH Tr. at 11. Bills did not ask Petitioner about his criminal history or investigate Petitioner's criminal history. EH Tr. at 12. Based on his counsel's advice, Petitioner decided to change is plea to guilty. Doc. #61 at 20.

9. On December 12, 2005, Petitioner pled guilty to one count of distribution and possession with the intent to distribute heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). Doc. #61 at 20. Prior to accepting Petitioner's guilty plea, this Court conducted the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure. Doc. #61. During this colloquy, the Court informed Petitioner that his maximum statutory sentence was a term of imprisonment of twenty years. Doc. #61 at 12-13. Petitioner confirmed that there was no plea agreement and that there were no promises regarding his actual sentence. EH Tr. at 16-19; Doc. #61 at 11, 15. The Court also confirmed that Petitioner understood that if his actual sentence was more severe than he expected, he would have no right to withdraw his guilty plea. Doc. #61 at 12. The Court informed him that a Presentence Report would be completed before the Court could determine his sentencing guideline range. Doc. #61 at 11. Petitioner stated that neither the Government attorney nor his own counsel had instructed him to answer any question untruthfully.[1] Doc. #61 at 15.

10. The government and Petitioner did not enter into a written plea agreement. Rivetti did not make any promise about what Petitioner's actual sentence would be or offer any particular

---

[1] At the evidentiary hearing, Petitioner testified that he lied when he was answering the Court's questions at his change of plea hearing. EH Tr. at 29-30, 34-35. The Court finds Petitioner's testimony at the evidentiary hearing to be incredible and self-serving.

5

sentence in exchange for Petitioner's change of his not guilty plea. Prior to receiving the presentence report, Rivetti did not know that Petitioner was a career offender. EH Tr. at 39, 40, 43, 50. Rivetti did not investigate Petitioner's criminal history. EH Tr. at 53.

11.   The Presentence Report revealed Petitioner's extensive criminal history and his status as a career offender.[2] Pursuant to Section 4B1.1(b) of the United States Sentencing Guidelines, the Presentence Report calculated Petitioner's guideline range of imprisonment to be 151 to 188 months. Petitioner objected to the conclusion that he was a career offender. In the alternative, he argued that the career offender enhancement significantly over-represented his criminal history. Doc. #47.

12.   On April 13, 2006, the Court issued Tentative Findings and Rulings Concerning Disputed Facts or Factors and found that Petitioner was properly classified as a career offender. Doc. #48. The Court also stated that it would address Petitioner's "request . . . to deviate from the sentencing range suggested by the Sentencing Guidelines at the time of sentencing." Doc. #48 at 7-8.

---

[2]In order to trigger the career offender provisions of the Guidelines, a defendant must be at least 18 years old at the time of his offense, the offense of conviction must be a felony that is either a crime of violence or a controlled substance offense, and the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense as defined by USSG § 4B1.2.

13. On April 20, 2006, Petitioner was sentenced to a term of imprisonment of 151 months. At the hearing, Petitioner argued without success that the enhancement for his career offender status substantially overrepresented his criminal history. Doc. #60.

14. On April 28, 2006, Petitioner filed a notice of appeal. On June 7, 2007, the Third Circuit affirmed Petitioner's conviction and sentence. See United States v. Grant, No. 06-2503, 235 Fed.Appx. 911, 2007 WL 1643184 (3d Cir. June 7, 2007).

## II. Conclusions of Law

1. Section 2255 permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

2. In a proceeding under 28 U.S.C. § 2255, a petitioner bears the burden of proving that he is entitled to relief. United States v. Davis, 394 F.3d 182, 189-90 (3d Cir. 2005).

3. A petitioner seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for counsel's deficient

performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. According to the Third Circuit:

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).

4. The Government concedes that Petitioner has met the first prong.[3] Doc. # 82 at 38. Therefore, the only issue is

---

[3] "[F]amiliarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation." United States v. Day, 969 F.2d 39, 43
(continued...)

whether Petitioner was prejudiced by his counsel's deficient performance.

5. In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), the Supreme Court applied the Strickland standard in the context of challenges to guilty pleas that are based on ineffective assistance of counsel. The second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. The petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

6. The Third Circuit has long held that defense counsel's "misrepresentations" or "erroneous predictions" concerning applicable guideline ranges or probable sentences do not amount to prejudice. United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases); see also United States v. Jones, 336 F.2d 245, 254 (3d Cir. 1992) (defendant unable to establish prejudice when sentenced to 130 months after alleged promise of 71 months because of district court's "lengthy and extensive" Rule 11 colloquy

---

[3](...continued)
(3d Cir. 1992). "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." Id. Of course, this is not to suggest that counsel must provide "a detailed exegesis of the myriad arguably relevant nuances of the Guidelines." Id. Nevertheless, as the Government concedes, Petitioner's counsel's performance was deficient in this regard.

informed defendant of maximum sentence, defendant confirmed there was "no promise or assurance of any kind" and court explained that defendant would not be permitted to withdraw his plea if sentence was more severe than expected); United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

7. Rivetti's discussions with Bills about what Petitioner's sentence might be do not change the Sixth Amendment analysis. It is irrelevant that Rivetti's estimates, which were based on what he knew at the time, turned out to be inaccurate once Petitioner's career offender status was discovered. Nothing Rivetti said can be construed to be a promise, assurance or prediction about what Petitioner's actual sentence was going to be. But cf. Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972) (denying postconviction relief and noting that the petitioner did not "allege any Government involvement in communicating to him the assurances" that his two sentences would run concurrently). The Government's involvement here does not rise to the level of an "assurance" of an actual sentence. The error is solely the responsibility of Petitioner's counsel, an error that was cured at Petitioner's change of plea hearing on December 12, 2005.

8. This Court conducted a lengthy and extensive Rule 11 colloquy, during which Petitioner was informed that there were no guarantees as to a sentence and the Court could sentence him to the maximum term and Petitioner admitted that there were no promises or predictions about what his actual sentence would be. Doc. # 61 at 12. There is nothing in the record to distinguish Petitioner's case from the long line of Third Circuit precedent. See Shedrick, 493 F.3d at 299; Jones, 336 F.3d at 254; Mustafa, 238 F.3d at 492; and Masciola, 469 F.2d at 1059. Once a court has engaged in the kind of elaborate colloquy that this Court did here, a defendant's plea must be "accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977). Petitioner's trial attorney failed to investigate Petitioner's criminal history and then miscalculated what his sentence might be. Nevertheless, because of the Rule 11 colloquy, Petitioner was not prejudiced by counsel's deficient performance.

9. Furthermore, once informed of his career offender status, Petitioner was not entitled to withdraw his guilty plea, and he was, therefore, not prejudiced by his counsel's failure to petition for withdrawal. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). A district court may allow a defendant to withdraw his guilty plea if he has a "fair and just reason" for

doing so. Fed.R.Crim.P. 11. The burden of demonstrating a "fair and just reason" falls on Petitioner, and that burden is substantial. United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). A defendant cannot withdraw his guilty plea "simply on a lark." United States v. Hyde, 520 U.S. 670, 676 (1997). The Third Circuit has "consistently recognized that a criminal defendant has no absolute right to withdraw a guilty plea," and that a district court's ruling on a motion will be disturbed only on an abuse of discretion. United States v. Martinez, 785 F.2d 111, 113 (3d Cir. 1986).

10. When reviewing a motion to withdraw a guilty plea, there are three factors to consider: (1) whether the defendant meaningfully asserts his innocence; (2) the strength of the reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal. United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citations omitted). None of these factors would have justified the granting of a motion to withdraw Petitioner's guilty plea. First, Petitioner conceded that he had not reasserted his innocence. EH Tr. at 36. Second, in light of this Court's Rule 11 plea colloquy, Petitioner cannot provide a strong reason to justify withdrawal. See United States v. Thompson, 48 Fed.Appx. 24, 25, 2002 WL 31255495 (3d Cir. 2002) (affirming denial of motion to withdraw guilty plea where defendant was advised of "every aspect of the consequences of the guilty plea"). And with regard to the third

factor, "the government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of the plea." Martinez, 785 F.2d at 116.

11. Petitioner also argues that his counsel was ineffective in failing to inform the Court of relevant departure factors. However, the record makes it clear that his attorney did in fact argue that his career offender status overrepresented the seriousness of his criminal history, both in Petitioner's Position With Respect to Sentencing Factors and at the time of Petitioner's sentencing. Doc. #47 and Doc. #60. After hearing from the parties and recessing to review the presentence report, this Court sentenced Petitioner as a career offender. Doc. #60, pp. 24-25. The lack of success does not equate with ineffective assistance of counsel. "[T]he proper measure of attorney performances remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.

12. Finally, Petitioner's Fifth Amendment due process claim concerning a stipulated or promised sentence also fails. Rivetti's statements set forth nothing more than an estimate, albeit incorrect, of Petitioner's exposure, which was based on what he knew at the time. Rivetti's statements cannot be construed as a promise of or a bargain for a particular sentence, a conclusion that is reinforced by the absence of a written plea agreement. But cf. Santobello v. New York, 404 U.S. 257, 262 (1971) (prosecutor's

misstatement of the terms of a plea agreement constituted a breach, entitling defendant to trial court's consideration of withdrawal of plea or specific performance; "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). "Due process requires that a guilty plea be voluntary, that is, that a defendant be advised of and understand the direct consequences of a plea." United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir. 1991). As noted above in the Court's discussion of the significance of its Rule 11 colloquy in this case, this is what occurred here.

III. **Conclusion**

Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

s/Alan N. Bloch<br>United States District Judge

Dated:    January 4, 2010
ecf:      Counsel of record

14